UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOSHUA GREGOR O/B/O BRIAN GREGOR, )<br>        Plaintiff,                            )<br>                                         )<br>    v.                                          )<br>                                         )<br>KILOLO KIJAKAZI, Acting Commissioner of )<br>Social Security,                           )<br>        Defendant.                   ) | CAUSE NO.: 2:21-CV-35-JPK |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], and Plaintiff's Opening Brief [DE 19]. Plaintiff Joshua Gregor, on behalf of Brian Gregor (now deceased), requests that the March 31, 2020 decision of the Administrative Law Judge (ALJ) denying Brian Gregor's claims for disability benefits be reversed and benefits awarded. For the following reasons, the Court grants Plaintiff's request for remand, but declines to award benefits.

**PROCEDURAL BACKGROUND**

On January 24, 2019, Plaintiff[1] applied for disability benefits and supplemental security income, alleging disability beginning August 1, 2018. Plaintiff's application was denied initially and on reconsideration. Plaintiff requested a hearing, which was held before an Administrative Law Judge (ALJ) on February 27, 2020. On March 31, 2020, the ALJ issued an unfavorable decision, making the following findings[2]:

    1.    The claimant met the insured status requirements of the Social Security Act through December 31, 2023.

---

[1] The case is maintained on Brian Gregor's behalf by his son, Joshua Gregor. [*See* DE 1, ¶ 2]. For ease of reference in discussing the administrative proceedings, the Court refers to Brian Gregor as "Plaintiff."

[2] These findings correspond to the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

2.	The claimant had not engaged in substantial gainful activity since August 1, 2018, the alleged onset date.

3.	The claimant had the following severe impairments: degenerative disc disease of the lumbar spine and osteoarthritis of the right knee.

4.	The claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.	[T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he could occasionally climb ramps and stairs, as well as occasionally balance, stoop, kneel and crouch. He could never climb ladders, ropes, or scaffolds, crawl, or work at unprotected heights.

6.	The claimant was unable to perform any past relevant work.

7.	The claimant was [. . .] 52 years old, which is defined as a younger individual closely approaching advanced age, on the alleged disability onset date.

8.	The claimant had at least a high school education and was able to communicate in English.

9.	Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding the claimant was "not disabled," whether or not the claimant had transferable job skills.

10.	Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could have performed.

11.	The claimant had not been under a disability, as defined in the Social Security Act, from August 1, 2018, through the date of the decision.

(AR 31-38)[3].

---

[3] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

Plaintiff appealed, but the Appeals Council denied review. (AR 14-16). Plaintiff then filed this civil action seeking review of the Agency's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for benefits, a claimant must establish that he suffers from a "disability," defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether she is unable to perform her past relevant work, and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff, who worked for a carpet supply business and later for the City of Hammond streets and recycling departments (AR 59-60, 258), alleged that he became disabled in August

2018 due to back and joint pain. He alleged he could walk no more than half a city block and lift no more than 15 pounds (AR 248-255). An MRI revealed a series of back issues including mild disc space height loss, mild to moderate left neuroforaminal stenosis, and mild to moderate central canal stenosis. (AR 373). Plaintiff complained to doctors of back and joint pain that was 8 out of 10 in severity (AR 430, 492); on at least one occasion he presented with back pain of 10 out of 10 (AR 475). Plaintiff's treating physician wrote a letter saying that Plaintiff had been unable to work due to severe nerve root compression in his back. (AR 411). However, two state agency physicians opined that he could do light work with some limitations (AR 73-90, 93-116). The ALJ found the state agency opinions persuasive, and limited Plaintiff to light work with some modifications, but no other limitation on walking (AR 33, 35).

Plaintiff asserts three grounds for reversal of the ALJ's decision: that the ALJ failed to thoroughly analyze the opinion of Plaintiff's treating orthopedist, failed to properly support the RFC findings, and did not properly evaluate Plaintiff's subjective complaints. The Court finds no reversible error in the ALJ's assessment of the medical opinion. However, the ALJ's finding that Plaintiff could perform the specified range of light work was not supported by substantial evidence, and remand is required on that basis.

I.      **Opinion of Prasanth Nuthakki**

Plaintiff argues that the ALJ improperly evaluated the opinions of Dr. Prasanth Nuthakki, Plaintiff's orthopedist. For claims filed after March 27, 2017, as Plaintiff's was, the regulations no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Therefore, the so-called "treating physician rule" – which gave special deference to a claimant's own doctor unless the ALJ provided a "good reason" – no

5

longer applies. *McFadden v. Berryhill*, 721 F. App'x 501, 505 n.1 (7th Cir. 2018). Nonetheless, the ALJ must still provide a written explanation for her conclusion about the treating physician's opinion, drawing a logical bridge from the evidence to the conclusion. *See Giza v. Kijakazi*, No. 2:20-CV-00263-SLC, 2021 WL 4551387, at *5 (N.D. Ind. Oct. 5, 2021); *Inman v. Saul*, No. 1:20-CV-231-DRL, 2021 WL 4079293, at *3 (N.D. Ind. Sept. 7, 2021).

Generally, the ALJ must still weigh the same factors in considering medical opinion evidence: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length and purpose of the relationship; (4) specialization; and (5) any other factors that would "tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c, 416.920c. The "most important factors" are supportability and consistency. *Id*. §§ 404.1520c(a), 416.920c(a).

In this case, the record contained two letters from Dr. Nuthakki. One letter, dated February 18, 2019, stated that Plaintiff "has been unable to work since he established care with me on September 11, 2018 due to severe nerve root compression in the back." (AR 411). A second letter, dated June 20, 2019, repeated the identical statement, and added: "This is to update that he has remained unable to work due to his current lumbar condition." (AR 658). The ALJ "considered" both opinions, but afforded them no specific weight, in part because they were conclusory and did not contain a function-by-function analysis. (AR 34-35). Plaintiff argues that the absence of a function-by-function analysis is not an appropriate basis to reject a medical opinion, and that the ALJ's failure to analyze the regulatory factors requires remand.

As the ALJ explained, the doctor's letters were "conclusory": they contained essentially no explanation for the ALJ to assess. Without any further detail, "[s]tatements that [claimants] are or are not . . . able to work" constitute evidence that "is inherently neither valuable nor persuasive," because those issues are reserved to the Commissioner. 20 C.F.R. § 416.920b(c)(3). Therefore, an

6

ALJ can properly discount a conclusory, unexplained medical opinion that a claimant is unable to work because of his impairment. *See Albert v. Kijakazi*, 34 F.4th 611, 616 (7th Cir. 2022) ("Nobody disputes Albert's autism. But the ultimate determination of disability is reserved for the Commissioner, and [the plaintiff's physician] summarily asserting that the claimant is disabled does not suffice . . .") (citing § 416.920b(c)(3)); *see also Whitehead v. Saul*, 841 F. App'x 976, 982 (7th Cir. 2020) (ALJ discounted opinion that "lack[ed] detail to support [the doctor's] findings . . . [and did not] illuminate how she reached the proposed limitations."); *Cooley v. Berryhill*, 738 F. App'x 877, 880 (7th Cir. 2018) (ALJ appropriately discounted a doctor's conclusory statement that a claimant could not work).

Plaintiff argues[4] the ALJ should have made explicit findings as to supportability and consistency, as discussed in the regulations. To do that, the ALJ would need to analyze whether Dr. Nuthakki's treatment notes and the other medical records supported the proposition that Plaintiff was unable to work – which the ALJ did throughout the rest of the decision. And if there had been substantial evidence supporting the ALJ's finding that Plaintiff was not disabled, Dr. Nutthaki's conclusory statement "[was] not enough to require reversal." *Albert*, 34 F.4th at 616; *see also Karr v. Saul*, 989 F.3d 508, 512-13 (7th Cir. 2021) ("[T]he ALJ failed to expressly analyze Dr. Canavati's statement within the multifactor framework [for treating medical opinions]. The ALJ should have done so . . . but we cannot conclude under these circumstances that the ALJ's failure constitutes a legal error requiring reversal.").

---

[4] Plaintiff also argues that the ALJ discounted the opinion for an invalid reason, by pointing out that it did not include a function-by-function analysis. (Pl. Br. 12). It is true that a medical opinion does not have to be provided in "vocational terms . . . [A] physician is not required to submit a function-by-function evaluation in order to merit the ALJ's consideration." *Sonia H. v. Saul*, No. 19 CV 2956, 2021 WL 1426878, at *4 (N.D. Ill. Apr. 15, 2021). The ALJ's comments were ambiguous, but it appears the ALJ simply meant the opinion was not persuasive because it lacked detail about the alleged disability. (*See* AR 24-25 ("The undersigned considered these letters in the decision; however, they are not opinions with a function-by-function analysis. However, these letters were considered along with the claimant's longitudinal record.")).

7

II.     RFC (Standing and Walking)

The ALJ found that Plaintiff was capable of light work with no additional limitations on walking, meaning he could have done jobs that involve walking for most of the workday. *See* 20 C.F.R. § 404.1567(b) ("Even though the weight lifted may be very little, a job is [classified as light work] when it requires a good deal of walking or standing."); SSR 83-10, 1983 WL 31251 at *6 ("the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday"). Plaintiff alleged he could only walk 100 feet, or half a city block, before stopping to rest (AR 64-65, 253), and now alleges that the ALJ's findings about his walking abilities were not supported by substantial evidence.

The ALJ relied on the agency consultants' opinions that Plaintiff could do light work, finding them "persuasive" because they were "consistent with the evidence available at the time and supported by their review of the record." (AR 35). On the issue of walking, the examiners found that Plaintiff could "stand and/or walk" for about 6 hours in an 8-hour workday. (AR 78, 101). Each consultant referred to examinations in which Plaintiff showed normal gait, station, or balance. (*See* AR 75, 79, 102). The ALJ further noted that on at least one occasion, "Plaintiff demonstrated a slight antalgic gait," and the ALJ therefore added an additional restriction from working at unprotected heights.[5] (*Id.*).

Although Plaintiff asserts that the objective medical evidence "overwhelmingly supported" his allegations of severe walking limitations (Pl. Br. 6-7), the record is not so clear. It is undisputed that Plaintiff had "conditions that could reasonably cause difficulty with walking and sitting." (*Id.* at 6). The ALJ discussed much of the corresponding medical evidence, including Dr. Nuthakki's note that Plaintiff reported his pain "limit[ed] his standing and walking ability." (AR 33 citing AR

---

[5] Although the ALJ found that an antalgic gait affected Plaintiff's ability to work at unprotected heights, the ALJ did not explain why it would not also affect his ability to walk for long periods of time. (*See* AR 34).

500). The ALJ also discussed a March 9, 2019, letter to the agency from Dr. Mary Doyle: "Patient hasn't been seen in this office since [June 2018] . . . He had difficulty standing and walking without low back pain . . . If he is still currently having some difficulty with basic functions such as standing and walking, than any work related activities that require those activities would cause him further pain." (AR 35 citing AR 601). Aside from this, Plaintiff does not identify, and the Court's review has not found, any objective medical evidence in the record demonstrating that he could only walk 100 feet at a time. He had conditions and symptoms that could be *consistent* with that allegation, but this alone does not prove disability. *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018) ("It was Weaver's burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work.")).

Faced with this ambiguous record, the ALJ repeatedly relied on the fact that Plaintiff often showed normal gait, station, and balance. (*See* AR 34-35). The ALJ seemed to believe that these findings contradicted Plaintiff's allegations and showed he could stand and walk for 6 hours in an 8-hour workday. But is well-established that standing or walking for a short distance in the context of an examination is not the same as walking for a long distance, or standing or walking for hours on end. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("Scott successfully walked 50 feet without a cane within the confines of her office, but that brief excursion hardly demonstrates an ability to stand for 6 hours (and neither does Scott's testimony that she could walk 2 blocks)."); *see also Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018) ("The ALJ overstated findings from three diagnostic tests to discredit Gerstner's complaints . . . [Gerstner never claimed] that her condition totally impaired the abilities tested in these exams. Instead, she said that her pain was triggered by prolonged sitting, standing, or activity and stress."); *Murphy v. Colvin*, 759 F.3d 811, 818-19 (7th Cir. 2014) ("Dr. Mayer noted that Murphy's gait and tandem gait had returned to

normal, but that description is not informative as to whether Murphy could perform light work."). This error could be overlooked if the rest of the decision built a logical bridge to the conclusion that Plaintiff could stand and walk for long periods. However, that explanation is not present, and the ALJ made several related errors in analyzing the evidence.

The ALJ cherry-picked from the medical record in discrediting Plaintiff's complaints of pain. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). For example, the ALJ cited a medical note to say that Plaintiff "has intermittent flare-ups" in his knee, but "it resolves after a few days." (AR 34 citing AR 547). The ALJ ignored that on the same page, Plaintiff reported ongoing pain and swelling in his knee, separate from the occasional pains that had resolved. (AR 547). Summarizing another appointment, the ALJ reported that Plaintiff "did not have swelling; scoliosis on bending; edema; or obvious deformity." (AR 34 citing 633). But on the same exam, the nurse practitioner reported "low back pain that radiates down his calf," and assessed him to have chronic and continuous back pain rated 8 out of 10, "causing interferance [sic] with functional mobility and activities of daily living." (AR 633, 635). "It is not enough for the ALJ to address mere portions of a doctor's report." *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *see also Hart on behalf of JMH v. Kijakazi*, No. 1:21-CV-462-PPS, 2022 WL 3053937, at *4 (N.D. Ind. Aug. 3, 2022) (remanding where the ALJ cherry-picked and ignored contrary evidence from the same page).

The ALJ's analysis of Plaintiff's subjective complaints was flawed for similar reasons. The ALJ cited Plaintiff's function report for the premise that Plaintiff "revealed that he is able to perform most aspect[s] of personal care; household chores; grocery shopping; meal preparation; and laundry." (AR 34 citing AR 248-256). This paints a misleading picture: in that document, Plaintiff stated that it was "hard to get dressed" (AR 248); "it's hard to walk so I do very little" (AR 248); as for "meal preparation," he could make sandwiches but a friend brought him meals

(AR 250); he did "light cleaning and laundry" once a week, with a friend's help, which took him "a long period of time" (AR 250); and it took "hours" to shop because he had to rest a lot (AR 251). The ALJ seemed to attribute normal daily activities to Plaintiff, ignoring that he allegedly struggled with almost all the activities listed. While the ALJ had previously referenced Plaintiff's testimony that his pain "limits" his daily activities (AR 33), the ALJ did not seem to consider how restrictive those limits were. *See Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) (ALJ "ignored Moss's numerous qualifications regarding her daily activities"); *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) ("Craft's so-called 'daily walk' was merely to the mailbox at the end of the driveway, his vacuuming took only four minutes, and his grocery shopping was done on a motorized cart at the store . . . such testimony about how Craft copes with his daily activities should be considered in the RFC assessment.").

The ALJ made several other findings about Plaintiff's pain that, although not reversible error in themselves, do not explain his ability to walk for long periods. Addressing Plaintiff's "complaints of chronic back and knee pain," the ALJ observed that "none of his treating sources have reported observing any of the signs frequently present in an individual who suffers from severe and disabling pain. These include weight loss, premature aging, muscle atrophy from non-use or facial expressions such as grimacing."[6] (AR 34). The ALJ noted that Plaintiff frequently presented as "well-nourished and in no acute distress." (*Id.* citing, *e.g.*, AR 424). As with the

---

[6] Plaintiff objects to this conclusion, but the ALJ did not necessarily "play doctor" by noting that a person did not show certain symptoms. *See*, *e.g.*, *Back v. Barnhart*, 63 F. App'x 254, 259 (7th Cir. 2003) ("The ALJ stated that if Back's shoulder pain caused the limitations he alleged, then there likely would be some physical manifestation of these limitations such as muscle weakness or atrophy. . . .[R]ather than playing doctor, the ALJ appeared to be pointing out examples of the kinds of objective evidence one might expect to see if Back had the limitations he claimed."); *Truman v. Barnhart*, No. IP01-1114-C-T/F, 2002 WL 1821768, at *6 (S.D. Ind. June 24, 2002).

Nonetheless, there was at least one instance in which a nurse practitioner performed a "Pain Assessment" and reported Plaintiff to have back pain, rated 8 out of 10, which was "chronic" and "continuous." (AR 632).

findings of normal gait and station, "no acute distress" speaks to how Plaintiff presented during brief examinations, and the ALJ did not explain how it is probative of a person's ability to stand or walk for long periods.[7]

Finally, the ALJ found that while Plaintiff "testified that he occasionally uses a cane," the record did not reflect that he had been prescribed a cane, so although Plaintiff "may [have been] doing this, it appears to be volitional." (AR 34). If Plaintiff *had* been prescribed a cane, that would be objective medical evidence of his need for it – the ALJ could properly point out that such evidence was absent here. Plaintiff does not explicitly say that the RFC should have accounted for a cane (*see* Pl. Br. 10); that would have required "medical documentation" describing the purpose of the cane and when it was needed.[8] However, on remand, the ALJ should consider Plaintiff's allegations about his cane use even if the record does not establish medical necessity, because it could be indicative of his walking ability even if a doctor did not prescribe it. *See Thomas v. Colvin*, 534 F. App'x 546, 550 (7th Cir. 2013) (explaining that an ALJ must still "address the evidence" regarding a claimant's cane use even if there is inadequate medical documentation); *Eakin v. Astrue*, 432 F. App'x 607, 613 (7th Cir. 2011) ("The fact that an individual uses a cane not prescribed by a doctor is not probative of her need for the cane in the first place.").

---

[7] "Without an explanation of what [the doctor] meant by no acute distress, it cannot be assumed that Plaintiff was pain-free. 'No acute distress' generally means that the patient is conscious, not bleeding profusely, not struggling for breath, and other things of that nature indicating that the patient is not in need of immediate emergency care." *Brenda L. v. Kijakazi*, No. 3:21CV859, 2022 WL 2763561, at *8 (N.D. Ind. July 15, 2022); *see also Wanserski v. Colvin*, No. 1:14-CV-1033-DKL-JMS, 2015 WL 5692521, at *7 (S.D. Ind. Sept. 28, 2015) ("[w]ithout an explanation of what the recording medical professionals meant by 'no acute distress,' it cannot be simply assumed" that the claimant did not experience pain to the degree she alleged).

[8] "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185 at *7 (July 2, 1996).

**III.        Request for Award of Benefits**

Plaintiff requests that the Court reverse and remand for an award of benefits or, in the alternative, for a new hearing. "Courts have the statutory power to affirm, reverse, or modify the Social Security Administration's decision, with or without remanding the case for further proceedings." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). Nonetheless, "[a]n award of benefits is appropriate . . . only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Id.* at 415.

The Court has carefully considered this request. It appears that a person of Plaintiff's age without transferable skills, who could only perform sedentary work, would likely be disabled. *See* Pl. Br. 10; 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.14. The ALJ did not make a finding on transferable skills (*see* AR 37), but it is quite possible that if Plaintiff could not perform light work, he was disabled. The Court also acknowledges that, because Plaintiff is now deceased, the possibility to expand or clarify the record is limited. Nonetheless, while Plaintiff's limitations may have been greater than what the ALJ documented, the evidence does not clearly confirm his allegations of disability. Although Plaintiff's treating physician opined that he was disabled, this is not a case where the ALJ improperly dismissed that opinion with "no sound basis in the record." *C.f. Kaminski v. Berryhill*, 894 F.3d 870, 876 (7th Cir. 2018). It cannot be said that "all factual issues" have been resolved and "the resulting record supports only one conclusion," so the Court remands without awarding benefits. *Allord*, 631 F.3d at 415.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS in part** the relief sought in Plaintiff's Opening Brief [DE 19] and **REMANDS** the decision of the Commissioner of the Social Security

Administration. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Plaintiff and against Defendant.

So ORDERED this 28th day of September, 2022.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT
